## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMANDER WILLIAM MICHAEL FUTCH,     )
6412 8th Street E     )
Fife, WA 98424     )
      )
       *Plaintiff,*     )
      )
   v.     )     Civil Action No. 1:25-cv-1802.
      )
ROBERT F. KENNEDY, JR.     )
in his official capacity as     )
SECRETARY OF HEALTH AND     )
HUMAN SERVICES,     )
200 Independence Avenue, SW     )
Washington, DC 20201     )
      )
       *Defendants.*     )

## **COMPLAINT**

### *Introduction*

Commander William Michael Futch ("CDR Futch") served his country for over thirty years, twenty one on active duty and nine in the reserves. Most of those years were active duty in the United States Public Health Service ("USPHS") and four years active in the Navy, with the remaining years in the Army Guard and Navy reserve. However, erroneous advice regarding his Training and Education ("TED") credit caused him to be commissioned at the wrong rank, which led to him missing out on a promotion to the rank of Captain ("CAPT") later in his career. After retiring in February 2021, CDR Futch applied to the Board for Correction of Public Health Service Commissioned Corps Records ("Correction Board") in April 2022. In deciding his initial application, the Correction Board made a decision contrary to law and regulation, failed to consider CDR Futch's non-frivolous argument, and arbitrarily and capriciously reached a conclusion unsupported by the evidence. When CDR Futch applied for reconsideration in April 2025,

Christine Collins, a Board Action Officer, denied the application, purportedly on behalf of the Correction Board. That *ultra vires* decision was contrary to law and regulation, and once more failed to consider CDR Futch's non-frivolous argument in support of his application.

For all these reasons, CDR Futch accordingly seeks that this Honorable Court hold the Correction Board's decision to be arbitrary and capricious, and remand to the Correction Board for a new review which complies with all applicable laws and regulations.

### *Jurisdiction*

1.      This Court has jurisdiction under 28 U.S.C. § 1331 and under 5 U.S.C. §706 (2)(A), which provides for redress in the district courts based upon agency decisions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### *Venue*

2.      Venue is proper under 28 U.S.C. §1391(e)(1).

### *Parties*

3.      Plaintiff, CDR William Michael Futch, is a citizen of the United States who resides at the address listed in the caption. At all relevant times during the conduct that gave rise to this action, Plaintiff was residing in the United States.

4.      Defendant, Robert F. Kennedy, Jr., is named in his official capacity as Secretary of Health and Human Services. Secretary Kennedy is responsible for overseeing the decisions of the Board for Correction of Public Health Service Commissioned Corps Records. *See* 42 U.S.C. 213a(a)(12), (b)(1); *see also* 10 U.S.C. 1552.

### *Timeliness*

5.      On April 4, 2022, CDR Futch filed his application with the Board. On August 30, 2024, CDR Futch received a letter from the Board unanimously denying his application and all

requested relief. On April 1, 2025, CDR Futch applied to the Board for reconsideration of his application, pursuant to 10 U.S.C. § 1552(a)(3)(D) and CCD 129.01, 6-6k. On April 2, 2025, Christine R. Collins, a contractor serving as a Board Action Officer, informed CDR Futch, via memorandum, that she was refusing to act on his application for reconsideration.

6.      Because CDR Futch's complaint is filed within six years of the Board's August 30, 2024, decision, CDR Futch's complaint is timely filed. *See* 28 U.S.C. § 2401(a); *Rempfer v. U.S. Dept. of Air Force Bd. for Correction of Military Records,* 538 F.Supp.2d 200, 206 (D.D.C. 2008).

### *Statement of the Facts*

7.      CDR Futch grew up in North Carolina where his lifelong passion for medicine was first fostered during Boy Scouts while earning his first aid skill award and merit badge.

8.      After graduating high school in 1990, CDR Futch joined the US Navy and became a Hospital Corpsman, spending his first tour with the US Marine Corps at Marine Corps Recruit Depot after undergoing basic training at Camp Lejeune, North Carolina. CDR Futch's second tour was at the Naval Hospital in Yokosuka, Japan.

9.      During his second tour, he worked in the Emergency Department and became the first enlisted Corpsman to be an Advanced Cardiac Life Support Instructor, something unheard of at the time but paving the way for future enlisted Corpsman to follow suit.

10.      He also joined a rare group of enlisted personnel certified in Pediatric Advanced Life Support and Neonatal Advanced Life Support. Helping people and knowing he was making a difference in the lives of those he served furthered CDR Futch's passion for medicine.

11.      Upon completing his Naval service contract in 1994, CDR Futch enlisted in the Army National Guard.

12.     CDR Futch also attended Coastal Carolina University where he received an Associates of Arts degree in 1996.

13.     In 2000, he attained a Bachelor of Science in the Physician Assistant Program from East Carolina University: School of Allied Health Sciences.

14.     Between 1994 and 2001, CDR Futch remained in the Army National Guard.

15.     Following receipt of his Bachelor's degree, CDR Futch then continued his studies at the University of Nebraska and completed all course work in the fall semester of 2002 and was awarded a Master of Physical Assistant Studies specializing in Emergency Medicine the following 2003 spring semester.

16.     He graduated cum laude, on the President's List and the Dean's List.

17.     Deeply motivated by the 9/11 terrorist attacks, CDR Futch decided to join the service again, feeling he could make a difference.

18.     In 2002, CDR Futch returned to active duty in the Public Health Service ("PHS" or "USPHS") where he served with the Bureau of Prisons until his departure in December 2004.

19.     In 2004, CDR Futch took a civilian emergency medicine job in Goldsboro, NC.

20.     From July 1, 2004, until January 31, 2005, CDR Futch provided volunteer hospice home care to the terminally ill grandparents of Dr. Trumilla Morris.

21.     In early 2005, CDR Futch applied to reactivate in the PHS. He had a 100 exceptional assimilation score and no adverse action in his PHS files.

22.     In his reactivation paperwork, due to administrative oversight, CDR Futch left a six-month time period after his emergency medicine job blank.

23.     A representative from PHS HQ asked CDR Futch about this missing six-month period. CDR Futch explained that had been providing volunteer hospice care for those six months.

24.     When asked how he made money to cover his expenses during that time period, CDR Futch informed PHS HQ that his expenses were covered by profits he made selling a piece of real estate property.

25.     However, instead of suggesting that CDR Futch apply the volunteer time for Training and Education ("TED") credit, CDR Futch was advised by PHS HQ to write that his job was real estate even though he did not have a real estate license, nor had he ever worked in that field.

26.     On February 1, 2005, CDR Futch returned to active duty with the PHS, commissioning at the grade of Second Lieutenant ("LTJG"). Over the next sixteen years, CDR Futch enjoyed a long and distinguished career in the PHS.

27.     On March 31, 2005, two months after coming onto active duty, CDR Futch sought TED credit for his over six months of volunteer hospice time from July 1, 2004, to December 31, 2004.

28.     CDR Futch immediately emailed a TED request in an attached Word document to USPHS Headquarters Director of Personnel Officer, then Captain Denise Canton, for his volunteer time.

29.     The Word document request stated that:

> I am writing in regards to my Training and Education [TED] time. When I was coming onto active duty (2/1/05) I listed only the time that I was paid for. After review of some PHS regulations I found that volunteer time counts as well towards T&E [TED] time. From 1JULY04 until 31DEC04, I volunteered for terminal ill patients with cancer providing home health care. I worked at least 40hrs/wk sometimes much more over these six months. Also during this time I was working on selling off some of my personal properties which I did list when I joined the PHS. The reason I did not list this time when I joined the PHS is because my recruitment adviser was more interested in the time that I received compensation. Now that I know

that volunteer time counts I would like my record reviewed and amended if the board sees fit. Thank you.

30.    The official request in a Word document was sent as an attachment in an email to CAPT Canton on or about March 31, 2005.

31.    A few days after this first request was sent, CAPT Canton verbally informed CDR Futch that his request was denied because it is not USPHS's policy to grant TED for volunteer time.

32.    CDR Futch reasonably relied on CAPT Canton's assurances and dropped the issue of TED for his volunteer time since he now believed, erroneously, that he did not qualify.

33.    Throughout his career, CDR Futch was highly recommended for promotion to the next grade on each of his performance evaluations.

34.    CDR Futch was consistently recognized throughout his career for his high motivation, skill, and knowledge. Unfortunately, CDR Futch was medically retired just before obtaining promotion to CAPT.

35.    CDR Futch was nominated for the USPHS Commendation medal for the work he provided during the early stages of the COVID-19 pandemic in several detention facilities.

36.    During his career, CDR Futch has served in or alongside the Army, Navy, Marines, and U.S. Coast Guard.

37.    CDR Futch has been awarded the Navy Good Conduct Medal, National Defense Medal, Overseas Service Ribbon, Armed Forces Humanitarian Service Medal, two Army Reserve Component Achievement Medals, Army Service Ribbon, NC Meritorious Unit Citation, NC State Active-Duty Ribbon, and the NC Service Ribbon.

38.    On or about February 4, 2021, while CDR Futch was in the process of planning for his retirement from the PHS, he interviewed a Physician Assistant candidate for a position on his

team and discovered that the candidate (another USPHS member) had received TED for her volunteer time.

39.    Following this interview, CDR Futch submitted a TED correction request for the six months of volunteer hospice care time from July 1, 2004, to December 31, 2004, on February 4, 2021, at 1:20 pm, emailing USPHS's Separations Team Lead, Lieutenant Commander Alesha Harris, stating: "I also noted errors with my T@E [TED]".

40.    On February 5, 2021, at 12:49 pm, LCDR Harris notified CDR Futch that he needed to take his TED concern to USPHS's Policy Team, the Commissioned Corps Headquarters Policy & Evaluation Branch.

41.    LCDR Harris stated: "Our policy team can be reached at: OS CCISPolicy CCISPolicy@hhs.gov. Please ask them about how you should go about addressing your TED concern."

42.    On February 8, 2021, at 2:38 AM, CDR Futch followed LCDR Harris' instructions and emailed USPHS's OS CCISPolicy regarding his TED concern:

> I am retiring soon and found that I was never credited 6 months of T&E [TED].  Sometime shortly after joining I informed PHS HQ that I had volunteered for six months which was not initially on the application.  The reason it was not there was because I was told that they were interested in my work history only. This is coming up because I recently hired a new PHS officer that had volunteer time and she was granted T&E [TED] credit for it. And when I had checked my T&E [TED] I never had received credit for my volunteer work. Do you need a signed affidavit for this volunteer time to receive credit for this T&E [TED]? If so I will get to work on getting this turned in.

43.    On February 16, 2021, at 12:30:40 PM, OS CCISPolicy emailed CDR Futch back to request more information to support his request, asking him to submit his info through CDR Futch's agency regional personnel administration officer. The email stated:

> We strongly recommend you seek assistance from your agency and or Corps Liaison to address your issue … (CCI 231.01, "General Appointment Standards," govern how training and experience date (T&E) [TED] is calculated and awarded. Please review CCI 231.01 and provide of overview of the experience you mention and include section of the policy is applicable. In addition, please submit relevant documents to support your inquiry.

44.    Accordingly, on February 23, 2021, at 4:46 PM, CDR Futch contacted his agency regional personnel administration officer, Tamica Gooding, and stated: "I am requesting to have my T&E [TED] updated. Please see attachment." The attachment to the email was a sworn statement dated on February 22, 2021, which stated that:

> I am CDR William Michael Futch PA-C and I am about to medically retire. I was reviewing my OPF and found that I was missing just over 6 months of T&E [TED]. I have been a practicing PA since completing school in 2000. CCI 231.01 Policy relates to work experience and doesn't specifically mention that it must be paid work experience. Over time I have met others that have been given T&E [TED] experience for their volunteer time as well. See attached affidavit from Dr. Morris attesting to my volunteer work from July 1st 2004 – January 31st 2005 [sic]. When I returned to active duty on February 1st 2005 I was told by the recruiter to list my past work experience. During a phone call with the recruiter I was asked what I had been doing for the last 6 months. I had told them that I was volunteering and was preparing my house to be flipped. I was told to list that last 6 months as real estate. On March 31st 2005 I drafted a memo for CAPT Canton stating that I had volunteered full time starting July 1st 2004 until I returned to active duty. I do not see where CAPT Canton had given me the credit for my volunteer time. I am asking that I be given the credit for my volunteer time and adjust all pay accordingly.

45.    Ms. Gooding never responded to CDR Futch or acknowledged his email in any way.

46.    CDR Futch was honorably discharged from the PHS on February 28, 2021, without having his TED request properly processed.

47.    On April 4, 2022, CDR Futch applied to the Correction Board, seeking TED credit for his volunteer time providing hospice care, and for his education; promotion to Captain, and

EPP ("Exceptional Efficiency Promotion") with resulting backpay and allowances had he been given the TED credit he deserved; and any other relief the Correction Board deemed just and proper.

48.    CDR Futch provided a memorandum and four exhibits in support of his application.

49.    In his application, CDR Futch argued that he should have been granted TED credit pursuant to Commissioned Corps Instruction ("CCI") 231.03, paragraph 6-11(d)(7)(c)(ii).

50.    CDR Futch also argued that the volunteer hospice care which he provided from July 1, 2004, to December 31, 2004, as well as part time in January 2005, should have been applied toward his TED credit so that upon his return to the PHS, he could have commissioned at a higher rank (First Lieutenant or "LT") than he did. This failure to commission at the rank of LT caused him to be unfairly behind schedule in the promotion cycle throughout his career.

51.    CDR Futch argued that he would have been promoted to CAPT much sooner had he been commissioned as an LT.

52.    CDR Futch argued that while he was medically retired prior to being promoted to CAPT, he would have been eligible to be promoted to CAPT as early as 2016 had he been commissioned at the rank of LT, and likely would have been promoted given his stellar achievements.

53.    On March 9, 2023, the Board provided CDR Futch with a copy of an advisory opinion, which recommended denying all relief, arguing that CDR Futch's application was untimely and that the PHS properly applied the governing policies and procedures for granting TED credit.

54.    On August 17, 2023, CDR Futch provided a rebuttal to the advisory opinion.

55.     In his rebuttal to the advisory opinion, CDR Futch noted the similarities between his case and PHS BCMR Case No. 18-005, in which the applicant was a "highly skilled and an asset to Corps" who argued that she was given incorrect information during three telephone conversations with the USPHS general information recruitment call center.

56.     In that case, even though the events were not substantiated by written documentation or any other corroborating evidence, the Correction Board did "not question the accuracy of the applicant's memory of conversation events" in PHS BCMR Case No. 18-005.

57.     Instead, the Correction Board ruled in favor of the applicant "based on an injustice from the misinformation [applicant] received and grant[ed] [applicant] full" TED credit. *Id.*

58.     The Correction Board determined that there "was an injustice and [applicant] should be given credit for all service" because she received "incomplete" and "incorrect" information from the USPHS. *Id.*

59.     The Correction Board further recognized that its decision entitled the applicant "to retroactive promotion to O-4 effective July 1, 2019, with back pay and benefits." *Id.*

60.     CDR Futch argued that his case was not meaningfully distinguishable from PHS BCMR Case No. 18-005.

61.     CDR Futch was also a highly skilled USPHS member who was given incorrect information verbally with no written proof that the misinformation was given.

62.     And as in PHS BCMR Case No. 18-005, CDR Futch relied upon and was adversely affected by that misinformation.

63.     In a final similarity with PHS BCMR Case No. 18-005, CDR Futch was able to partially recreate the conversations regarding his TED credit which occurred when he was coming back on to active duty in the PHS in early 2005.

64.    CDR Futch argued that because the Correction Board had granted relief in PHS BCMR Case No. 18-005, it should grant relief in his case.

65.    In his rebuttal to the advisory opinion, CDR Futch also argued that under CCI 231.01, paragraph 6-2(e)(1)(c), his volunteer hospice care should have been counted towards TED credit.

66.    CCI 231.01, paragraph 6-2(e)(1)(c) provides that "[m]onth-for-month TED credit shall be awarded for full-time work experience which is fully creditable."

67.    There is no requirement in CCI 231.01 or 231.03 that the work experience be performed at an accredited facility or preapproved by the USPHS to qualify for TED credit.

68.    CDR Futch argued that his volunteer hospice service should also be counted toward his TED credit under these regulations, citing an affidavit sworn pursuant to 28 U.S.C. § 1746 provided by Dr. Trumilla Morris, which stated, "CDR William Michael Futch worked to provide hospice home health care for both of my terminally ill grandparents, full time from July 1st, 2004, through December 31st, 2004. He also worked part time the month of January 2005 just prior to him joining the USPHS."

69.    CDR Futch subsequently received a letter dated August 30, 2024, which informed him that the Board had considered his application on May 8, 2024, and unanimously decided against granting any relief.

70.    The Board found that CDR Futch's "submission to be untimely, as it was made 17 years after the initial period in question and outside the 3-year window for reconsideration."

71.    The Board also stated that CDR Futch:

claim[ed] of six months of volunteer hospice work …You did not substantiate this claim by providing evidence that the services being provided were done at an accredited facility, proper justification, and approved of the Commissioned Corps. The only evidence provided

was a draft memo allegedly sent to CAPT Canton on or about March 31, 2005, but was never followed up with CAPT Canton to ensure the six months of alleged volunteer work was reviewed, approved, and applied to your record. Additionally, you mention another officer receiving similar credit per outlined in your complaint, however, this information could not be corroborated or substantiated.

72.     The Correction Board's decision did not address CDR Futch's argument regarding the similarities between his case and PHS BCMR Case No. 18-005.

73.     The letter further indicated that Melissa J. Bruce, Executive Director of the Program Support Center, had approved the Board's recommendation on September 3, 2024.

74.     PHS regulations provide that an applicant whose application to the Board has been denied may request reconsideration:

> if newly discovered evidence or information, not previously considered by the Board, is presented by the applicant or otherwise comes to the attention of the Board and then only if the newly discovered evidence or information would, if true, result in a determination other than that originally made. The ES [Executive Secretary] may refuse to consider evidence or information claimed to be newly discovered if he/she finds that such materials could have been presented to the Board prior to its original determination if the applicant or his counsel had exercised reasonable diligence. A denial of reconsideration is approved by the ES. The applicant has one year to request reconsideration of the ED [Executive Director]'s decision on the Board's recommendation.."

> Commissioned Corps Directive ("CCD") 129.01, 6-6k.

75.     On April 1, 2025, at approximately 8:29 pm, CDR Futch sent his application to the Board for reconsideration.

76.     In support of his application for reconsideration, CDR Futch provided 18 exhibits, as well as an updated memorandum with new legal arguments which ran 19 pages.

77.     In his application memorandum, CDR Futch argued, *inter alia*, that the Correction Board's denial of his application failed to comply with CCI 231.03, paragraph 6-2e(2)(a)(i), which

provides that "TED credit for work experience may be awarded to candidates in any category, specialty, or discipline for a variety of work experiences, including, but not limited to…Private, clinic, or group practice as is appropriate for the particular category, specialty, or discipline in question," and also failed to comply with the holding of *Haselwander v. McHugh,* 774 F.3d 990, 998 (D.C. Cir. 2014).

78.     CDR Futch's application thus complied with CCD 129.01, 6-6k's requirements: it was filed within one year of the Board's August 30, 2024, decision, and included "newly discovered evidence or information, not previously considered by the Board…[which] would, if true, result in a determination other than that originally made."

79.     But on April 2, 2024, at approximately 12:52 pm, less than 17 hours after receiving CDR Futch's application for reconsideration, Christine R. Collins, who identified herself as a "Board Action Officer," emailed counsel for CDR Futch, writing, "we are unable to accept your client's request for reconsideration. Your client's case has already been provided to the Board and a final decision has been made…At this time, your request for reconsideration has been denied and not [sic] further action will be taken."

80.     Although Ms. Collins represented herself to be acting in her capacity as a "Board Action Officer," Ms. Collins did not state that she was taking this action on behalf of the Executive Secretary.

81.     Upon information and belief, Ms. Collins is not the Executive Secretary within the meaning of CCD 129.01, 6-6k.

82.     Ms. Collins did not state in her denial email that CDR Futch's application for reconsideration failed to include "newly discovered evidence or information, not previously

considered by the Board…[which] would, if true, result in a determination other than that originally made." CCD 129.01, 6-6k.

83.     Upon information and belief, Ms. Collins did not review CDR Futch's application for reconsideration to determine whether it contained "newly discovered evidence or information, not previously considered by the Board…[which] would, if true, result in a determination other than that originally made." CCD 129.01, 6-6k.

84.     Ms. Collins also did not state in her denial email that she had considered CDR Futch's argument in his application for reconsideration that the Correction Board's denial of his application failed to comply with the holding of *Haselwander,* 774 F.3d at 998.

### *Plaintiff's First Claim*

### Violation of 5 U.S.C. § 706 (2)(A) – Ms. Collins' Denial of CDR Futch's Application for Reconsideration Was Contrary to 10 U.S.C. § 1552(a)(3)(D) and CCD 129.01, 6-6k.

85.     The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

86.     Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

87.     When the Secretary of a military department, or a person so designated by such a Secretary, decides to depart from the decision of the military department's correction board, the decision of the Secretary or the Secretary's delegate is bound by the same standards as those that bind the initial decision by the correction board. *See Fuller*, 538 F. Supp. 2d at 187-8.

88.     Like all federal agencies, boards for the correction of military records are not permitted to make decisions which are contrary to law or regulation. *See, e.g., Walker v. Shannon,* 848 F. Supp. 250, 255 (D.D.C. 1994); *see also Accardi v. Shaughnessy,* 347 U.S. 260, 267 (1954).

89.    10 U.S.C. § 1552 governs reconsideration at military correction boards, including the PHS Correction Board. *See* 42 U.S.C. § 213a(a)(12).

90.    Here, Ms. Collins' denial of CDR Futch's application for reconsideration was contrary to 10 U.S.C. § 1552(a)(3)(D).

91.    10 U.S.C. § 1552(a)(3)(D) provides that a request for reconsideration shall be reconsidered by a military correction board "if supported by materials not previously presented to or considered by the board in making such determination."

92.    In his application for reconsideration, CDR Futch provided the Correction Board with 18 exhibits, as well as an updated memorandum with new legal arguments which ran 19 pages. In his application memorandum, CDR Futch argued, *inter alia*, that the Correction Board's denial of his initial application failed to comply with CCI 231.03, paragraph 6-2e(2)(a)(i), and the holding of *Haselwander,* 774 F.3d at 998.

93.    Yet despite CDR Futch's compliance with 10 U.S.C. § 1552(a)(3)(D)'s requirements, Ms. Collins informed CDR Futch that his application for reconsideration had been denied.

94.    Ms. Collins' denial of CDR Futch's application for reconsideration was also contrary to CCD 129.01, 6-6k.

95.    Additionally, CCD 129.01, 6-6k outlines two requirements which applicants must follow to seek reconsideration at the PHS Correction Board: the application for reconsideration must be filed within one year of the Correction Board's previous decision, and the application for reconsideration must include "newly discovered evidence or information, not previously considered by the Board…[which] would, if true, result in a determination other than that originally made."

96.    Under CCD 129.01, 6-6k, only the Executive Secretary is empowered to determined that an applicant has not satisfied these criteria.

97.    CDR Futch's application complied with CCD 129.01, 6-6k's requirements: it was filed within one year of the Correction Board's August 30, 2024, decision, and included "newly discovered evidence or information, not previously considered by the Board…[which] would, if true, result in a determination other than that originally made."

98.    Yet on April 2, 2024, at approximately 12:52 pm, less than 17 hours after receiving CDR Futch's application for reconsideration, Ms. Collins denied CDR Futch's application for reconsideration.

99.    Ms. Collins did not state in her denial email that CDR Futch's application for reconsideration failed to include "newly discovered evidence or information, not previously considered by the Board…[which] would, if true, result in a determination other than that originally made."  CCD 129.01, 6-6k.

100.    And given the relatively short amount of time in which CDR Futch's application for reconsideration was in Ms. Collins' possession, it strains credulity to think that Ms. Collins reviewed all 18 exhibits and the 19 page memorandum which together composed CDR Futch's application for reconsideration, compared them to CDR Futch's initial application, and then determined that the application did not contain "newly discovered evidence or information, not previously considered by the Board…[which] would, if true, result in a determination other than that originally made." CCD 129.01, 6-6k.

101.    Even if Ms. Collins did review the evidence and make this determination, she had no authority to do so, as Ms. Collins is not the Executive Secretary. CCD 129.01, 6-6k.

102. Moreover, Ms. Collins represented herself to be acting in her capacity as a "Board Action Officer," and did not state that she was taking this action on behalf of the Executive Secretary.

103. Ms. Collins' denial of CDR Futch's application was therefore contrary to CCD 129.01, 6-6k, as well as 10 U.S.C. § 1552(a)(3)(D).

104. All in violation of 5 U.S.C. § 706 (2)(A).

### *Plaintiff's Second Claim*

**Violation of 5 U.S.C. § 706 (2)(A) – Ms. Collins' Denial of CDR Futch's Application for Reconsideration, And the Correction Board's Denial of CDR Futch's Initial Application, Both Failed to Address, Or Explain Why They Were Not Addressing, CDR Futch's Non-Frivolous Argument.**

105. The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

106. Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

107. When the Secretary of a military department, or a person so designated by such a Secretary, decides to depart from the decision of the military department's correction board, the decision of the Secretary or the Secretary's delegate is bound by the same standards as those that bind the initial decision by the correction board. *See Fuller*, 538 F. Supp. 2d at 187-8.

108. A military correction board's decision is considered arbitrary and capricious when it "entirely fail[s] to consider an important aspect of the problem" presented in an application. *See Motor Vehicle Manufacturers' Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 43 (1983).

109. A Correction Board entirely fails to consider an important part of the problem

presented in an application if the Correction Board either does not address, or does not explain why it is not addressing, non-frivolous arguments raised by an applicant. *See, e.g., Saint–Fleur v. McHugh*, 83 F.Supp.3d 149, 155 (D.D.C. 2015); *Rudo v. Geren*, 818 F. Supp. 2d 17, 26-7 (D.D.C. 2011); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005); *Mudd v. Caldera*, 26 F.Supp.2d 113, 120-123 (D.D.C. 1998); *Frizelle v. Slater,* 111 F.3d 172, 177 (D.D.C. 1997).

110.    A Correction Board that meets an applicant's argument with silence has failed to consider that argument. *Tennekoon v. Fanning,* 156 F.Supp.3d 208, 218 (D.D.C. 2016). *See also Roberts v. Harvey*, 441 F.Supp.2d 111, 122 (D.D.C.2006) (remanding where a Correction Board "failed to grapple with what appears to be a substantial issue"); *Mori v. Dep't of the Navy*, 917 F.Supp.2d 60, 64 (D.D.C.2013) ("By not discussing plaintiff's evidence, the Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found plaintiff's evidence unpersuasive").

111.    If a Correction Board fails to address, or fails to explain why it has not addressed, arguments "which do not appear frivolous on their face and could affect the Board's ultimate disposition," a reviewing court must remand the application to the Correction Board to consider the argument. *Appleby v. Harvey,* 517 F.Supp.2d 253, 266 (D.D.C. 2007) (quoting *Frizelle*, 111 F.3d at 177). *See also Saint-Fleur,* 83 F.Supp.3d at 157-158 (holding that because the parties' briefing did not adequately substantiate that the applicant's argument was frivolous, the proper course was a remand to the Correction Board).

112.    "A fundamental norm of administrative procedure requires an agency to treat like cases alike. If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." *Westar Energy, Inc. v.*

*Federal Energy Regulatory Com'n,* 473 F.3d 1239 (D.C. Cir. 2007), *quoting NLRB v. Washington Star Co*., 732 F.2d 974, 977 (D.C. Cir. 1984).

113.    This obligation extends to boards for the correction of military records, which are bound to consider relevant precedent and to put forward a reasoned explanation when they depart from prior decisions. *See Kreis v. Secretary of the Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005); *see also Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 162 (D.D.C. 2011).

114.    It is "axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Wilhelmus,* 796 F. Supp. 2d at 162 (internal citation omitted).

115.    Here, Ms. Collins' denial of CDR Futch's application for reconsideration failed to address, or explain why it was not addressing, CDR Futch's non-frivolous argument.

116.    Ms. Collins did not state in her denial email that she had considered CDR Futch's arguments in his application for reconsideration that the Correction Board's denial of his application failed to comply with CCI 231.03, paragraph 6-2e(2)(a)(i), and the holding of *Haselwander,* 774 F.3d at 998.

117.    Because Ms. Collins met these arguments by CDR Futch with silence, she failed to address, or explain why she was not addressing, these arguments. *Tennekoon,* 156 F.Supp.3d at 218. *See also Roberts*, 441 F.Supp.2d at 122; *Mori*, 917 F.Supp.2d at 64.

118.    Additionally, the Correction Board failed to address, or explain why it was not addressing, CDR Futch's argument that his case was similar enough to the Correction Board's decision in PHS BCMR Case No. 18-005 as to mandate his requested relief.

119.    Especially given the Correction Board's obligation to "treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so," *Wilhelmus,* 796 F.

Supp. 2d at 162, the Correction Board had an obligation to address, or explain why it was not addressing, CDR Futch's argument regarding the similarities between his case and PHS BCMR Case No. 18-005, similarities which CDR Futch argued mandated his requested relief.

120.    However, the Correction Board met this argument with complete silence.

121.    The Correction Board therefore failed to address, or explain why it was not addressing, CDR Futch's non-frivolous arguments. *Tennekoon,* 156 F.Supp.3d at 218. *See also Roberts*, 441 F.Supp.2d at 122; *Mori*, 917 F.Supp.2d at 64.

122.    Because both Ms. Collins and the Correction Board failed to address, or explain why they had not addressed, arguments by CDR Futch "which do not appear frivolous on their face and could affect the Board's ultimate disposition," in violation of 5 U.S.C. § 706(2)(A), this Court must remand the application to the Correction Board to consider CDR Futch's arguments. *See Appleby,* 517 F.Supp.2d at 266 (quoting *Frizelle*, 111 F.3d at 177).

### *Plaintiff's Third Claim*

### Violation of 5 U.S.C. § 706 (2)(A) – The Board's Decision That CDR Futch's Initial Application Was Untimely Filed Was Contrary to Law.

123.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

124.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

125.    Like all federal agencies, boards for the correction of military records are not permitted to make decisions which are contrary to law or regulation. *Walker,* 848 F. Supp. at 255; *see also Accardi,* 347 U.S. at 267.

126.    10 U.S.C. § 1552, and case law concerning military correction boards, extend to members of the PHS and the PHS Correction Board. *See* 42 U.S.C. § 213a(a)(12).

127.    Applications for correction of a military record must be filed within three years of a PHS member's discovery of the error or injustice. 10 U.S.C. § 1552(b).

128.    However, the three-year statutory period under 10 U.S.C. § 1552(b) is tolled during a PHS member's time on active duty. *See* 50 U.S.C. § 3936(a); *Detweiler v. Pena*, 38 F.3d 591, 598 (D.C. Cir. 1994).

129.    Here, CDR Futch's initial application was timely filed.

130.    CDR Futch's original application was filed on April 4, 2022.

131.    While this was clearly more than three years after the error or injustice chronicled in CDR Futch's application, which occurred in early 2005, because CDR Futch was on active duty in the PHS from the discovery of the injustice until February 28, 2021, the three-year statutory period under 10 U.S.C. § 1552(b) was also tolled until that date, rendering CDR Futch's April 4, 2022, filing timely. *See* 50 U.S.C. § 3936(a); *Detweiler*, 38 F.3d at 598.

132.    The Correction Board's decision that CDR Futch's initial application was untimely is therefore contrary to law, in violation of 5 U.S.C. § 706 (2)(A). *See id.*

### *Plaintiff's Fourth Claim*

**Violation of 5 U.S.C. § 706 (2)(A) – The Correction Board's Decision That CDR Futch Failed to Substantiate His Request for TED Credit in His Initial Application Was Arbitrary and Capricious and Contrary to Regulation.**

133.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

134.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

135.    Like all federal agencies, boards for the correction of military records are not permitted to make decisions which are contrary to law or regulation. *Walker,* 848 F. Supp. at 255; *see also Accardi,* 347 U.S. at 267.

136.    Decisions of correction boards which are unsupported by the evidence of record are arbitrary and capricious: "To put it simply, a decision unsupported by evidence would be arbitrary." *Mitchell v. Del Toro,* 2024 WL 4891906 *1, *4 (D.D.C. November 26, 2024), citing *Ass'n of Data Processing Serv. Orgs. v. Bd. Of Govs. of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984).

137.    When considering the decision of a correction board, a reviewing court is not "empowered to rubber-stamp the Board's decision simply because the supporting evidence may be substantial when considered by itself and in isolation from the evidence that fairly detracts from the Board's conclusion." *Smith v. Dalton*, 927 F.Supp. 1, 4 (D.D.C. 1996).

138.    Here, the Correction Board's decision that CDR Futch failed to substantiate his request for TED credit in his initial application was arbitrary and capricious and contrary to regulation.

139.    Under CCI 231.03, paragraph 6-2e(2)(a)(i), and CCI 231.01, paragraph 6-2(e)(1)(c), CDR Futch's volunteer hospice care should have been counted towards TED credit.

140.    CCI 231.03, paragraph 6-2e(2)(a)(i) provides that "TED credit for work experience may be awarded to candidates in any category, specialty, or discipline for a variety of work experiences, including, but not limited to…Private, clinic, or group practice as is appropriate for the particular category, specialty, or discipline in question."

141.    CCI 231.01, paragraph 6-2(e)(1)(c) further provides that "[m]onth-for-month TED credit shall be awarded for full-time work experience which is fully creditable."

142.    CDR Futch provided corroborating evidence for his volunteer hospice care in the form of an affidavit sworn pursuant to 28 U.S.C. § 1746 provided by Dr. Morris, which stated, "CDR William Michael Futch worked to provide hospice home health care for both of my terminally ill grandparents, full time from July 1st, 2004, through December 31st, 2004. He also worked part time the month of January 2005 just prior to him joining the USPHS."

143.    Yet the Correction Board denied CDR Futch's application because it found that CDR Futch "did not substantiate [his] claim by providing evidence that the services being provided were done at an accredited facility, proper justification, and approved of the Commissioned Corps."

144.    However, there is no requirement in CCI 231.03, paragraph 6-2e(2)(a)(i), that the work experience be performed at an accredited facility or preapproved by the USPHS to qualify for TED credit.

145.    Notably, the Correction Board never determined that CDR Futch had not performed this volunteer hospice care: the Correction Board only determined that CDR Futch's claim could not be substantiated within existing PHS records.

146.    It is arbitrary and capricious for the Correction Board to deny CDR Futch relief for a lack of corroborating records when the lack of corroborating records is the injustice which CDR Futch petitioned the Correction Board to redress. *See Haselwander,* 774 F.3d at 998 (holding that a military correction board cannot escape its statutory obligation to correct an injustice simply by pointing to a gap in an applicant's records, when correcting records is the board's entire purpose).

147.    The Correction Board's denial of CDR Futch's application was therefore contrary to regulation. *Walker,* 848 F. Supp. at 255; *see also Accardi,* 347 U.S. at 267.

148.    The Correction Board further claimed that the only evidence in support of his argument that he completed TED credit from July 1, 2004, to December 31, 2004, and during January 2005 "was a draft memo allegedly sent to CAPT Canton on or about March 31, 2005," and CDR Futch's "mention [of] another officer receiving similar credit per outlined in your complaint."

149.    However, the Correction Board neglected to discuss the most crucial piece of evidence which CDR Futch provided in support of his claim: the affidavit sworn pursuant to 28 U.S.C. § 1746 provided by Dr. Morris, which stated, "CDR William Michael Futch worked to provide hospice home health care for both of my terminally ill grandparents, full time from July 1st, 2004, through December 31st, 2004. He also worked part time the month of January 2005 just prior to him joining the USPHS." *See Code v. McCarthy,* 959 F.3d 406 (D.C. Cir. 2020) (sworn affidavit, standing alone, enough to overcome presumption of government regularity in Correction Board case).

150.    The Correction Board's denial of CDR Futch's application neglected to consider the most probative piece of evidence CDR Futch submitted.

151.    While the evidence supporting the Correction Board's decision "may be substantial," this is only the case because the evidence was "considered by itself and in isolation from the evidence that fairly detracts from the Board's conclusion." *Smith*, 927 F.Supp. at 4.

152.    Such a one-sided consideration of the evidence is arbitrary and capricious. *See Mitchell,* 2024 WL 4891906 at *4; *Smith*, 927 F.Supp. at 4.

153.    All in violation of 5 U.S.C. § 706 (2)(A).

*Prayer for Relief*

WHEREFORE, Plaintiff prays that judgment be entered:

(a)  Holding that Ms. Collins' denial of CDR Futch's application for reconsideration was contrary to 10 U.S.C. § 1552(a)(3)(D) and CCD 129.01, 6-6k, and thus in violation of 5 U.S.C. § 706 (2)(A); and,

(b)  Holding that Ms. Collins' denial of CDR Futch's application for reconsideration, and the Correction Board's denial of CDR Futch's initial application, both failed to address, or explain why they were not addressing, CDR Futch's non-frivolous argument, in violation of 5 U.S.C. § 706 (2)(A); and,

(c)  Holding that the Correction Board's decision that CDR Futch's initial application was untimely filed was contrary to law, in violation of 5 U.S.C. § 706 (2)(A); and,

(d)  Holding that the Correction Board's decision that CDR Futch failed to substantiate his request for TED credit in his initial application was arbitrary and capricious and contrary to regulation, in violation of 5 U.S.C. § 706 (2)(A); and,

(e)  Finding that the Plaintiff is the "prevailing party" as that term is defined in 28 U.S.C. § 2412 (a)(1) and (b), and finding that the position of the Secretary of Health and Human Services and the Correction Board is not "substantially justified" as that term is defined in 28 U.S.C. § 2412 (d)(1)(A), and awarding costs and the reasonable expenses of fees and attorneys to CDR Futch; and,

(f)  any other and further relief as the Court may deem, in the circumstances, be just and proper.

Dated June 9, 2025.                                 Respectfully submitted,

                                                                 */s/ Dylan Thayer*
                                                                 Dylan Thayer

DC Bar No. 90015821

Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

*Attorney for Plaintiff*